UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

JASON GONZALEZ, a minor, by his mother
and best friend Melba Usquiano,

                    Plaintiff,

         -against-

PHILIP AMICONE, individually,
EDMUND HARTNETT, individually,
JOHN A. LISZEWSKI, individually
CITY OF YONKERS, New York,
POLICE OFFICER SHIELD #336, POLICE
OFFICER SHIELD 124, POLICE OFFICER
SHIELD 942, individually, and POLICE
OFFICERS JOHN DOE'S #1 to #20,

                 Defendants.

--------------------------------------------------------------x

07 Civ.   (     )

**COMPLAINT**

**Jury Trial Demanded**

**07 CIV. 7600**

**ORIGINAL**

Plaintiff JASON GONZALEZ, a minor, by his mother and best friend Melba

Usquiano, by his attorneys Lovett & Gould, LLP, for his complaint respectfully states:

## NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately the

result of conduct jointly engaged in by the Defendants while acting under color of the

laws of the State of New York, for violations of Plaintiffs' rights as guaranteed by reason

of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C.

§1983.



## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

3. Plaintiff JASON GONZALEZ, a minor, by his mother and best friend MELBA USQUIANO, is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint plaintiff was employed by The Guardian News, Inc., a domestic corporation having its principal offices for the conduct of business at 251 North Avenue, New Rochelle, New York. On a weekly basis the corporation publishes and disseminates, by hand and by use of so-called newsracks, a free newspaper known as "The Westchester Guardian" (hereinafter "Guardian"). That publication focuses on and reports about amongst other things municipal corporate corruption in the incumbent administration of the City of Yonkers.

4. Defendant PHILIP AMICONE (hereinafter "Amicone"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly elected, incumbent Mayor of the Defendant City.

5. Defendant EDMUND HARTNETT (hereinafter "Hartnett"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly appointed, incumbent Police Commissioner for the Defendant City.

6. Defendants POLICE OFFICER SHIELD 336, POLICE OFFICER SHIELD 124, and POLICE OFFICER SHIELD 942, each of whom is sued in his individual and personal capacities only, at all times relevant to this complaint were sworn members of the Defendant City's Police Department. At such time during discovery as these officers

actual names are ascertained, plaintiff will seek leave of the Court to add their actual names to the complaint.

7. Defendant CITY OF YONKERS, New York (hereinafter "City"), is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said State.

8. POLICE OFFICERS JOHN DOE'S #1 to #20, each of whom is sued in his/her individual and personal capacities only, are sworn members of the City's Police Department. Although their identities are presently unknown, their names will be ascertained during discovery at which time Plaintiffs will seek leave of the Court to add their actual names to the complaint.

## THE FACTS

9. On the front page of the Guardian published July 5, 2007, the headline was: "Amicone Sells Out Families of Yonkers. . .Enbraces Giulio Cavallo; Brings in Nick Spano Mob". In that connection:

a. A page "2" article referenced Amicone as a "Man Who Would: Take the endorsement of Nick Spano, a fallen, crooked politician, and create taxpayer-funded jobs for his mob; Bring Giulio Cavallo, a political prostitute who sells cross-endorsements for cash, into the election process; Run on a party line whose chairman, Zehy Jereis, is an election fraudster and a convicted drug dealer", and,

b. A page "4" editorial expressed the following "Opinion": "Such has been the sordid tale of recent elections in Westchester, and particularly in the City of Yonkers. Given that history, we believe that the race for Mayor of Yonkers, pitting incumbent

Republican Phil Amicone, and every undesirable political creature he can muster, against

Independent Nader Sayegh, and Democrat Dennis Robertson, in a context that will

require the utmost attention of the Voters' Rights Division of the Justice Department, and

the provision of sufficient observers and enforcement personnel to protect the integrity of

the outcome."

10. On the front page of the Guardian published the week of July 9, 2007, the

headline read: "A Tale of Two Cities", beneath which to the left was a photograph of the

Mayor of Mount Vernon, New York (Ernie Davis), and beneath which to the right was a

photograph of Amicone. The Davis photograph bore the legend: "DUMB". The Amicone

photograph bore the legend: "DUMBER" (hereinafter collectively referred to as "DUMB

& DUMBER") - - in connection with which readers were invited to "See In Our Opinion,

p4".

11. In the editorial concerning the front page headline, captioned "In Our

Opinion . . .Sodom and Gomorrah", the Guardian expressed *inter alia* the following

thoughts regarding Davis and Amicone:

> "We must sadly conclude that Davis and Amicone have each been
>
> abject failures, little more than caretakers, at best, not likely to
>
> improve the circumstances of the city they have been entrusted with,
>
> if placed back into their present positions. In short, we believe
>
> Ernie Davis and Phil Amicone have not only squandered vast human
>
> and financial resources, but also the wonderful opportunity to bring
>
> about significant positive change.
>
> Consider the fact that Mount Vernon and Yonkers are each under

4

Federal Investigation. . .in connection with projects and programs

involving huge sums of money. . .There's a distinct odor of fish

somehow attached to these financial mysteries.

    . . .As regards crime, there is no denying that street crime and

gun violence in both Yonkers and Mount Vernon have been spiraling

out of control under Amicone and Davis respectively. Additionally,

the Yonkers Police Department has had, and continues to have,

a well-deserved reputation for police brutality, a problem neither

Phil Amicone nor Commissioner Hartnett have made any convincing

effort to abate.

*                    *                    *

    The decay and destruction of formerly strong, proud neighborhoods

and public schools under Davis and Amicone has been the inevitable

product of corrupt, uninspired administrations more concerned with

satisfying and fattenening political powerbrokers and criminal

elements such as Giulio Cavallo, Zehy Jereis, Nicky Spano, Larry

Schwartz, Reggie LaFayette, and their ilk. . .In short, we believe Ernie

and Phil have been marching to the beat of the wrong drummer for

quite some time, and are not likely to alter their cadence anytime soon."

12. Commencing during the week of July 9, 2207, and continuing thereafter, the

owner of The Guardian News, Inc. and a number of Guardian employees including

plaintiff repeatedly sought to distribute inside and/or outside Yonkers' City Hall:

    a. Copies of DUMB & DUMBER as contained in the Guardian,

5

b. Copies of the July 26, 2007, Guardian the front page headline of which reported: "Guardian Publisher Offers $25,000 Reward For Information Leading to the Arrest and Conviction of Westchester Public Officials and Politicians Who Have Broken the Law and Betrayed the Public Trust",

c. Copies of the August 2, 2007, Guardian the front page headline of which read: "Phil Amicone A Huge Flop! Fails to Deal With Police Brutality. Sharpton Correctly Identifies Problem As <u>Not</u> Targeting Only the Minority Community",

d. Copies of the August 9, 2007, Guardian:

i) The front page of which carried the headline "Dennis Robertson Declares: 'We Need to Stop Balancing Our Budget On the Backs of Homeowners'. . .Points to $60 Million 'Doomsday' Amicone Deficit", and;

ii) The back page of which contained an advertisement from Citizens Against Injustice that read: "The Most Corrupt Administrations Ever. How much more can citizens endure? Yonkers Mayor Phil Amicone. . .High Crime. . .High Taxes. . .Corruption. . .Theft. . .No-show jobs. . .Broken education system. . .Vote for HONESTY! INTEGRITY! RESPECT!. . .Nader Sayegh for Yonkers Mayor", and,

e. Copies of the August 16, 2007, Guardian the back page of which repeated the advertisement referenced *supra* in paragraph 12(d)(ii).

13. In that connection pursuant to a coordinated action orchestrated by Amicone, Hartnett, their co-defendants and numerous members of the City's Police Department, all

copies of the Guardian were repeatedly confiscated and discarded by Defendants - - hateful conduct motivated in whole or in substantial respect by the substantive content of the Guardian concerning Amicone and the Yonkers Police.

14. Also in that connection and pursuant to the same coordinated action, Guardian newsracks were repeatedly confiscated and discarded by Defendants under the direction of the City's Commissioner of Public Works, action taken by similarly motivated hateful conduct.

15. As a further consequence of that coordinated action, Defendants repeatedly and daily targeted employees of The Guardian News, Inc.", as indicated *infra*, threatened them with arrest, and charged them criminally - - with the same motivation and the objective of entirely stopping dissemination of the Guardian in and about City Hall and the City because of its substantive content.

16. By way of contrast publications favorable to Amicone and the City (such as the ironically named "Yonkers City of Vision") were permitted by the Defendants to be dispensed from *inter alia*:

> a. A newsrack, located on a stairway in City Hall,
>
> b. A counter at a security desk in City Hall as manned by a uniformed Police Officer, and,
>
> c. Other locations situated on City-owned property.

17. Also by way of contrast, persons distributing the publications favorable to Amicone and the City were permitted with impunity by Defendants to place those periodicals:

> a. In the stairway newsrack referenced *supra*, and,

7

b. On the security desk counter as referenced *supra*, and

c. Other locations situated on City-owned property.

18. For the purpose of disseminating copies of the Guardian as referenced *supra* Plaintiff repeatedly and non-disruptively distributed to willing recipients, copies of the Guardian.

19. As a proximate result of Defendants' conduct Plaintiff was confronted by City Police Officers including POLICE OFFICER SHIELD 336, POLICE OFFICER SHIELD 124, and POLICE OFFICER SHIELD 942 and:

a. Ordered to cease distributing the Guardian on the supposed premise that its distribution was illegal in Yonkers,

b. Issued criminal informations:

i) The first of which the police refused to give to Plaintiff, a circumstance that manifestly is intended to result in his failure (for lack of knowledge of the return date) to appear in Yonkers City Court - - with the resulting issuance of a bench warrant for his arrest, and,

ii) The second of which charged him with "not using sidewalk provided" in connection with his distribution of the Guardian,

c. Threatened with physical injury, arrest/incarceration should he return to distribute the Guardian, and,

d. Coerced to depart from the City by intimidation.

20. Under the premises Defendants' conduct has caused Plaintiff: to be chilled in the exercise of his First Amendment rights as a consequence of which he will not prospectively distribute the Guardian in the City; emotional upset; public embarrassment;

public humiliation; shame; impairment of his right to liberty to the extent he is required by the criminal informations to appear in Yonkers City Court under threat of issuance of a bench warrant; anxiety; punishment for exercising his right of free speech; selectively punished, in contrast to distributors of periodicals favorable to Amicone and the City; and otherwise rendered sick and sore.

## AS AND FOR A FIRST CLAIM

21. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

22. Under the premises Defendants violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

23. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

24. Under the premises Defendants violated Plaintiff's rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully demanded:

    a.  Awarding against all Defendants such compensatory damages as the jury may determine,

    b.  Awarding against the individually named Defendants such punitive damages as the jury may impose,

c.  Permanently enjoining Defendants from interfering with Plaintiff's

distribution and/or dissemination of the Guardian within the City

and/or City Hall,

d.  Declaring that Defendants' conduct violated Plaintiff's rights as

guaranteed by the First and Fourteenth Amendments,

e.  Awarding as against all Defendants reasonable attorney's fees and

costs, and,

f.  Granting such other and further relief as to the Court seems just and

proper.

Dated: White Plains, N.Y.
      August 22, 2007

LOVETT & GOULD, LLP
Attorneys for Plaintiff
By:_____
Jonathan Lovett (4854)
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401